I represent Ms. Zhang, who has been in this country for 17 years. She has two children, aged 5 and 11, who are U.S. citizens. Her husband has no status in this country. Petitioner applied for cancellation of removal, which requires demonstration of extreme and unusual However, this standard is not so restrictive as to only a handful of applicants would be eligible for, as the Court found in previous cases. Petitioner demonstrated a variety of factors in this case, showing that she reached that standard. However, the Court below and the BIA committed a series of errors, which amount to errors of law. And that should be the focus of your argument today, because as you know, our jurisdiction is limited to these questions and not to a rebalancing of the factors on which the agency relied. That is correct. And we argue that this case actually amounts to this type of standard, because this case resembles in particular very closely Mendes v. Holder, in which in this case the Court found that it has jurisdiction. And the factors of that case very closely resemble the factors here. Petitioners in that case also had two children. One of the children suffered from asthma. They were unfamiliar with the environment and cultural situation in Mexico and had financial difficulties. Nevertheless, the Court and the BIA committed a series of errors. And what these errors are is that they either totally overlooked the factors or they seriously mischaracterized the factors that were presented. In our case, this is what happened. And the Courts have duty to carefully balance and review these factors. In particular, Petitioner argued that her husband has no status in this country. And the judge did not address this issue at all. And BIA — Was there not a reference to the fact, at least at the BIA level, that the husband had no status? The reference to the fact, I believe, in the footnote by saying that we're not sure what is being argued in that regard. The BIA said, we're not sure what is being argued in that regard. That's their exact quote. So they were aware, at least, of the fact. Yes. But they completely ignored the fact that his lack of status leads directly to mothers having to take children back to China because they have no opportunity to remain in the U.S. They have no close relatives. They have to leave. Nevertheless, the Courts found that this is not — either it's not a factor or it doesn't matter, or they didn't understand how it's directly related. But I thought before the IJA and at the BIA level, the agency is assuming that she is taking her children back to China and doing the hardship evaluation. I believe that's what they did, and that's an error as well. Because petitioners stated that she would take children to China because there's no opportunity for children to remain here. Of course, in the ideal situation, she would leave children here, considering a variety of medical issues, educational problems, inability to register for household register in China. So there's a variety of factors that would probably lead her to leave children here. But explain to me why it prejudiced your client that they — let's assume that they, the IJA and the BIA, just did not really understand the argument relating to her husband. Why is that prejudicial? If she's already said, I'm taking my children to China? Because that's a comparison of factors in the case. When you look at the circumstances — That doesn't explain why it's prejudicial. It's prejudicial because if she had the opportunity to leave the children here, that would be a comparison to other people in similar circumstances. Because when you evaluate the factors of hardship, you have to compare necessarily this to other people in similar circumstances. The standard is how would this be an extremely unusual hardship compared to other people who are being deported. So some people may have an opportunity to leave children here, and that would not be hardship to the children. Because remember that hardship is only to qualifying relatives. It's not hardship to the mother or the father. It's a hardship to children in this case. So to them, it would be a hardship, inability to stay. Yes, I'm still having difficulty seeing. I would understand it if the IJA or the BIA had said the children can remain with their father in the United States, so this is not such a hardship. But the agency said that the children were going to return to China and considered the hardships they might face because they would return to China, going to school at a later age, having medical conditions that might be treated differently. They may not have done enough with those factors, but they considered them. So I guess I'm also having difficulty seeing how they were prejudiced with regard to the assumptions about the father's status. The court should acknowledge the fact that the father doesn't have status. Therefore, children would have hardship. This is a hardship factor to them. Nevertheless, they did not view that as a factor, as a hardship factor at all. That doesn't seem to have been the argument made to the IJA or the BIA. There are other arguments that may have some traction, but that doesn't seem to be the argument, the precise argument that was presented. But maybe you should move to the other arguments. Right, so this is a balancing factor of various arguments, various factors that lead to the finding of extreme hardship. So the inability of children to stay here should have been acknowledged as a factor in this case. Other factors that the court mischaracterized and BIA essentially affirmed was inability of the children to register for household register. And I think it was just glossed over by the BIA, and the IJA simply stated that it's not really a hardship because there are 13 million people in China that are not registered. While 13 million in China is probably less than 1% of the population that are not registered for a variety of reasons. They could be not registered because they're in jail or for many other reasons. So here we're talking about U.S. citizen children who have zero status in China. They are not Chinese citizens. What does that mean in China if you can't register? This means that they don't have access to educational and health opportunities, the same as a Chinese citizen would. In other words, they don't have access to public schools. They have to pay out of pocket for schools. Same with health benefits, and that's directly related to the medical condition. And I think there's a lot of documents that were submitted in this case that demonstrate how important household register is in China, that it's a very restrictive society where everything is controlled, the population is controlled, and social benefits are doled out based on the registration. I'm out of time. Thank you. Excuse me. I'm not feeling the weather right now. May it please the Court, Sharon Clay on behalf of the government, this Court lacks jurisdiction to review the agency's hardship determination because Petitioner failed to present a legal question upon which this Court can review. The issues raised by Petitioner in her brief to this Court are simply disagreements with the agency's weighing of the evidence or a mischaracterization of the agency's findings, specifically getting to the issue of the agency's failure to consider the father's lack of status. The Court's or the Board's confusion regarding its relevancy was based on the fact that the claim was never developed in the underlying proceedings. Additionally, in the record it shows that the father, regardless of his status in his own affidavit, said that he intended to return to China with Petitioner if she was removed because they can't live apart. It was not about whether or not there was going to be a status. Courts generally don't find negative family unity cases. Generally, when they consider a hardship claim, they look at whether or not the family is going to stay together or whether or not they're going to be apart. And in this case, the family was going to stay together, so they couldn't really determine how much that would weigh on a hardship claim moving forward. Petitioner's second assertion was that she could overcome hardship was a mischaracterization of the record. What the agency essentially did was decided that she had not met her burden of showing that registration is denied to foreign-born children. There's absolutely nothing in the record that suggests or references foreign-born children other than the discussions that the Petitioner has in terms of their complaint or the hardship claim. What they also determined was that even if the children could not be registered, there's evidence in the record that shows that children who register also may have to pay fees and that there are unregistered children who actually gain access and that this access to benefits is relative to locality. So it varies from place to place in China, what the effect of non-registration would be on children? Yes, correct. So some persons actually are registered and they are required to still pay fees and benefits. There are people that are unregistered and are able to actually have access to these benefits, and there's relaxed restrictions placed on those individuals. So without any evidence with regard to Petitioner's actual hometown, the immigration judge just found it very difficult to determine whether or not hardship is going to be established in this particular case. So it was really the absence of evidence, not anything more. Correct, the absence. Affirmative. Correct, the absence of evidence made it difficult to make a determination. With regard to Petitioner's third argument on the 13 million people, I think that argument was also mischaracterized in the sense that they didn't rely on the 13 million people that are unregistered. What the immigration judge pointed to was that there were 13 million people that were unregistered in 2010 and that out of those people, only some people had restricted access to public benefits. And that particular reference was to the 2015. Would you agree that being unregistered in China? I know nothing about this, but would you agree that being unregistered in China has some impact? Yes, but it's relative to your locale. I mean, there's no way of knowing unless we're able to get more information about what happens in. The risk of an adverse financial or non-financial harmful impact is increased if you're not registered. I would not even say that either. I would say that the situation could be better for you, but it's not necessarily bad for you. And to kind of bring that point home is that when they referred to that 2015 report, they referred to the fact that they recognized that the ghost children or the children who were born out of wedlock in efforts to conceal were not the only individuals that were in that number, but that only some local officials actually prevented them or precluded them from having access. And although it was not raised in the argument, if you look at the record, what suggests that there's relaxed enforcement in her particular hometown is the fact that she is actually a child with two other siblings. So with child ñ China has a one-child policy, and usually they're restricted or supposed to be denied access if you exceed these provisions. But petitioner has not come forward to claim that they've suffered any kind of restrictions based on violation of the policy in her own hometown, which suggests that possibly they don't have the same kind of restrictions or they're a little bit more lax on the restrictions than other jurisdictions because the restrictions are maintained by the local police there. They use the FUCO registration system to track all of their family members. I'm just trying to understand the argument because I'm not sure that I completely understand it. Is the argument that she failed to, before the IJ, present evidence about where she was going to return? Correct. And therefore failed to show what the registration regime was there? That is correct. Okay. So her argument is speculative. She does not know. She was given an opportunity and was asked if she asked her parents about the registration in her hometown, and she didn't think it was important to know at this time because she wasn't removed yet. But they did ask her during the hearing, and although she was given plenty of opportunity to inquire about the availability of medical services there, what types of jobs are available in her hometown, what the income or the average income of people are in her hometown. The argument is if you're going to make a claim about the harm that you can't do, you've got to provide some evidence. Yes, provide some evidence to show that you can't find a job, some evidence that you can't get medical care, some evidence that your children can't be registered, and she has not done any of that here other than to submit the evidence of pollution and her children's health circumstances, which leads me to my last point. With regard to ignoring key evidence of her son's respiratory health, the agency did not overlook the evidence. She points to several articles that highlight the 1.2 million deaths that are attributed to pollution, that there are indoor seasonal or indoor inequality issues. But if you look at the record, the agency did not overlook the information. If you look at the immigration judge's decision, the immigration judge actually cites to that portion of the record as the portions of the record that she reviewed or he reviewed in order to determine whether or not pollution was going to be an issue for this particular complainant. What the immigration judge did find out is that the record shows that pollution is a problem, but it has not been shown or she has not shown it's a problem in her hometown. But the record clearly shows it is an issue in urban cities and in the northern parts of China. And while the immigration judge didn't take administrative notice of where she lived, she was asked if her hometown had an issue with pollution, and she did not offer any information, any environmental information about her particular home state. So in that essence, she has kind of failed to meet her burden of proving that pollution would be a problem, that her foreign-born children cannot be registered, that she's unable to find a job, she's not able to show that she will be denied public access to services. And even if she was denied or wasn't registered, she can't show that she couldn't afford those services because she hasn't provided any employment information of what's available in her hometown. And based on her testimony, she claims that she comes from an industrial town, which presumably means the government. Are you accepting people who are being removed pursuant to final orders of removal? I don't think so. To China? I don't think so, but they're not entertained. Why are you asking us to sign off on this if nothing is going to happen? Well, I thought I was trying to get this court case placed on PD myself, but apparently, PD? Well, prosecutorial discretion to kind of table the case, and I was informed by DHS that they weren't willing to entertain it in this particular situation. So nothing is going to happen? Especially with the tariffs? Especially with what? Especially with the tariffs, I doubt it. I just don't think China. They have not been very cooperative in terms of giving travel documents to their citizens, and we're frustrated that they're moving forward on some of these cases. Are you saying that DHS is insisting? I actually have the e-mail where I e-mailed them and said, could you please consider this case for prosecutorial discretion? She's been here for a long time. And they said they declined it based on the 2003 conviction for her. And although that was minor and it wouldn't preclude her from relief if she met her burden, it was enough for DHS to deny prosecutorial discretion. What happens to her if we deny this petition? If I had to guess, probably nothing. I don't know. I don't know how they're going to get travel documents. She's out there. She should be in the same situation she's in probably right now. Where is she now? She's probably here in New York living. She supposedly is a business owner of a $0.99 store, and she works two jobs. I think maybe a cashier at one location and owner of another one. And she's been doing that for the last five years, and I would assume that with two children she'll probably continue to do that. Because I don't see how, I don't see in a foreseeable future. We're spinning our wheels. It looks that way. I had a case like this the other day where a criminal defendant, I had to warn him that there's immigration consequences to your plea, and he was the second felony offender. I said, by the way, why weren't you deported after your first offense? He said, well, my country refused to accept me. Yep. China refuses to issue travel documents for its citizens. This is essentially a nullatory act, a negative act. I mean, it means nothing. You didn't hear it from me. Well said.  I disagree that what we're doing here is nullatory because I personally had clients who were deported, not just to China, but to many other countries, and deportation efforts are escalating. So people are always – But back to the People's Republic of China, not to Taiwan, not – Yes. People's Republic of China. I have clients deported to People's Republic of China. I'm not sure how Chinese use their discretion in issuing travel documents, but they do issue travel documents. Yes, clearly not in every case, just like any other country. They pick and choose, I guess, who they want to take. But they do accept – Your problem is someone else's problem. Right, but it is my problem because it's my client who is in immediate danger of being deported at any time. I have cases when ICE officers will come to their home, arrest them, and the next day they're on a plane. And our decision, if we were to deny the petition, is the last step in this process. So if travel documents became available – That is correct, and there should not be – She should be in the departure lounge. I'm sorry? She should be in the departure lounge pending some action by the Chinese government. Yes. Yes, and we get no prior notice. She'll be picked up and put on a plane. I don't mean to minimize this at all, and it is a problem for your client in one sense, but it's a little troubling because my understanding now that's confirmed is that the People's Republic of China is substantially not accepting its own citizens upon an order of removal. But you're telling me that you've got a different experience. Yes. So deportations definitely happen. I don't have statistics on it, but they do happen. And in my client's case, it's very dramatic because she's been here for 17 years. She has two children who have never been to China, and that's another factor because sometimes Chinese send kids to China and judges get upset about it when people apply for benefits when children are in China. But these children have never been to China. They are not familiar with the country, not familiar with the language even, because they speak Wenchuanese dialect and education in Chinese and Mandarin. So it's a very – Your adversary says that with respect to the registration issue, your client was given an opportunity to let the IJ know what locality she was prepared to return to and also what the registration regime was in that locality and failed to provide any record evidence. It's very hard to determine what regime. Is that correct? That's correct. We don't know what this particular town will do when she returns home. But what we do know is that there is a very restrictive regime towards people in China and that they would have a hard time registering. And even if they get registered, there will be definitely fees, financial expenses to do so.  And I believe the court misapplied the standard by saying that because people in China are able to live this way, there will be no hardship to petitioner. And the judge actually used that we did not indicate that her children would not be able to live good lives in China. So I don't know what judge considered to be good life in China considering the evidence presented.